RECEIVED

2026 OCT 20 P 1:31

UNITED STATES DISTRICT COURT

for the
Middle District of Alabama
Northern Division

STEFANIE KILLIAN, pro se
2805 Leopoldo Rd NW
Albuquerque, NM 87104
505-715-2997
skilliantz5@gmail.com,

Plaintiff

-v-

TROY UNIVERSITY; ALABAMA COMMISSION ON HIGER EDUCATION; KERRY J. PALMER; VEDA Y. TAYLOR; FRED FIGLIANO; MARY ANNE TEMPLETON; JUDY ROBERTSON; ROBIN MCGILL; AND RON LEONARD,

Defendants

CIVIL CASE NO. ______

2:26-cv-00876-BL-CWB

JURY DEMANDED

COMPLAINT

1. This is a civil action for breach of contract against Defendant Troy University, and for fraud, civil conspiracy, and deprivation of due process and equal protection under 42 U.S.C. § 1983 against the individual Defendants. Plaintiff enrolled in Troy University's online Interpreter Training Program ("ITP") based on explicit representations in the university's academic catalogue that the program would provide internship placements, field mentors, and the resource infrastructure necessary to complete the degree. Those representations were false for online distance-education students.

2. Troy University and its administrators maintained an undisclosed internal policy that systematically denied online students the internship placements, field mentors, and

resources promised in its public catalogue. When Plaintiff complained, the individual Defendants engaged in a pattern of active concealment. They fabricated an unauthorized academic and financial forgiveness request on Plaintiff's behalf, deposited money into her personal bank account without her consent, and offered her a manufactured, unearned degree—all in a coordinated effort to evade regulatory accountability. The Alabama Commission on Higher Education ("ACHE") and its named officials actively participated in concealing this fraud and limiting Plaintiff's recovery through a biased regulatory process.

JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over Plaintiff's federal constitutional claims pursuant to 28 U.S.C. § 1331, as this action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.
4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because the state law claims are so related to the federal claims that they form part of the same case or controversy.
5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to the claims occurred in this judicial district, specifically at Troy University in Pike County, Alabama, and at the Alabama Commission on Higher Education in Montgomery County, Alabama.
6. Assignment to the Northern Division of the Middle District of Alabama is proper because a substantial part of the core events occurred in Pike County, Alabama.

PARTIES

Plaintiff

7. Plaintiff Stefanie Killian, proceeding pro se, and was at all times relevant to this complaint a resident at 2805 Leopoldo Rd NW, Albuquerque, NM 87104 and an online distance-education student enrolled at Troy University from March 2020 to May 2022.

Defendants

8. At all times relevant to this complaint, Defendant Troy University was a public institution of higher education and an instrumentality of the State of Alabama. Its principal location is 600 University Ave, Troy AL 36082 and it may be served through the Office of the Senior Vice Chancellor for Financial Affairs and Online Education located at 241 Adams Administration Building, Troy, AL 36082.

9. At all times relevant to this complaint, Defendant Alabama Commission on Higher Education ("ACHE") was an agency of the State of Alabama responsible for higher education coordination and served as the state portal entity for the National Council for State Authorization Reciprocity Agreements ("NC-SARA") and it may be served at 100 North Union Street, Suite 782, Montgomery, AL 36104.

10. At all times relevant to this complaint, Defendant Kerry J. Palmer was the Dean of the College of Education and subsequently Senior Vice Chancellor for Academic Affairs at Troy University. He is sued in his individual capacity for damages under color of state law and may be served at his current place of employment at Georgia Southwestern State University, located at 800 GSW State University Drive, Wheatley Administration Building Room 212, Americus, GA 31709.

11. At all times relevant to this complaint, Defendant Hal Fulmer was the Associate Provost and Dean of Undergraduate Studies at Troy University. He is sued in his individual capacity for damages under color of state law and may be served at his residence located at 109 Monticello Dr., Troy, AL 36081.

12. At all times relevant to this complaint, Defendant Veda Taylor was University Registrar at Troy University. She is sued in her individual capacity for damages and in her official capacity for prospective injunctive relief under color of state law and may be served at her current place of employment at Trenholm State Community College located at 1224 Air base Blvd., Montgomery, AL 36108.

13. At all times relevant to this complaint, Defendant Fred Figliano was Chair of the Department of Teacher Education and subsequently Dean of the College of Education at Troy University. He is sued in his individual capacity for damages and in his official capacity for prospective injunctive relief under color of state law and may be served at Troy University through Office of Dean of Education located at 335 Hawkins Hall, Troy, AL 36082.

14. At all times relevant to this complaint, Defendant Mary Anne Templeton was Associate Provost for Academics at Troy University and served as the designated institutional liaison between Troy University and ACHE. She is sued in her individual capacity for damages and in her official capacity for prospective injunctive relief under color of state law and may be served at Troy University through the Office of Associate Provost for Academics located at 219 Adams Administration Building, Troy, AL 36082.

15. At all times relevant to this complaint, Defendant Judy Robertson was a Lecturer and Director of the Interpreter Training Program at Troy University. She is sued in her

individual capacity for damages and in her official capacity for prospective injunctive relief under color of state law and may be served at Troy University, 356 Hawkins Hall, Troy, AL 36082.

16. At all times relevant to this complaint, Defendant Robin McGill was Deputy Director for Academic Affairs at ACHE. She is sued in her individual capacity for damages and in her official capacity for prospective injunctive relief under color of state law and may be served at ACHE, 100 Union Street (North) Suite 782, Montgomery, AL 36082

17. At all times relevant to this complaint, Defendant Ron Leonard was Director of Special Initiatives at ACHE. He is sued in his individual capacity for damages and in his official capacity for prospective injunctive relief under color of state law and may be served at ACHE, 100 N Union Street Suite 782, Montgomery, AL 36082.

STATEMENT OF FACTS

18. In May 2020, Plaintiff enrolled in Troy University's online Interpreter Training Program ("ITP") under the terms established by the 2019-2020 Academic Catalogue. Plaintiff relied upon Federal Student Aid to fund this education.

19. Plaintiff reasonably relied upon: specific, unambiguous representations within the online 2019-2020 College of Education Academic Catalogue Mission Statement which promised to train individuals and provide comprehensive clinical specializations; the ITP course descriptions which stated that interns received feedback from onsite supervisors; the Program Admissions Checklist for Interpreter Training Program which lists "Internship Placement"; and the ITP prerequisite of students to pass the Sign Language Proficiency Interview prior to registering for ITP courses. Plaintiff was not required to be interviewed, and the testing site does not accept out-of-state students.

20. Contrary to these public representations, Troy University's ITP administrators maintained an undisclosed internal distance-education policy that completely denied online students internship placements, field mentors, or localized resource infrastructure. This restrictive policy was deliberately concealed from students until they completed all classroom coursework immediately prior to the clinical internship phase.

21. On October 18, 2021, the ITP director admitted that administration refused to amend or correct catalogue prerequisites out of an express fear that transparency would trigger a state-level regulatory review.

22. Throughout her enrollment, Plaintiff was subjected to arbitrary program deviations. In November 2020, the ITP director enrolled Plaintiff in non-required courses not covered by financial aid, forcing out-of-pocket payments. In January 2022, Student Services unilaterally changed Plaintiff's catalogue year from 2019 to 2021 without her knowledge or consent, fundamentally altering her degree trajectory and financial aid status.

23. Plaintiff repeatedly requested guidance—making forty-four separate requests to program directors and Defendant Robertson regarding field hours. In response, Defendant Robertson and staff told Plaintiff to substitute real-world Deaf community interaction with YouTube videos and book reports and stated that a different path might be a better fit.

24. Facing structural exclusion and unfulfilled programmatic mandates, Plaintiff withdrew from Troy University on May 22, 2022, with 3.79 cumulative GPA and Provost list honors. Plaintiff subsequently enrolled in an accredited interpreting program at the University of New Mexico ("UNM"), which refused to accept Troy University's unaccredited ITP courses.

25. On August 11, 2022, Plaintiff submitted a formal grievance to Defendant Palmer requesting a full tuition refund and grade corrections due to program deficiencies. Defendant Palmer engaged in an extended pattern of delay, sending eleven separate emails over several months stating the matter was under internal committee review.

26. On December 29, 2022, Plaintiff applied for Borrower's Defense to Repayment with Federal Student Aid.

27. To bypass Plaintiff's formal demands and conceal programmatic failings, Troy University officials fabricated administrative documents. On February 28, 2023, Records Specialist Michelle Stumpf informed Plaintiff that an "exception to policy for academic and financial forgiveness" had been submitted on Plaintiff's behalf without Plaintiff's knowledge, authorization, or consent. Stumpf failed to disclose the refund amount, and the Assistant Registrar, Obie Killcreas, subsequently informed Plaintiff only that the exception covered two terms.

28. The unauthorized and fabricated forgiveness request was processed and approved by Defendant Registrar Veda Taylor. On May 24, 2023, an unauthorized deposit of $1,940.00 was forced into Plaintiff's bank account. Bank Mobile Technologies later confirmed this was classified as a Financial Aid refund.

29. Defendants failed to notify Federal Financial Aid authorities of this forced retroactive adjustment, directly disrupting Plaintiff's lifetime Pell Grant allocations, Satisfactory Academic Progress ("SAP") status, and causing the premature depletion of her remaining undergraduate financial aid.

30. On March 12, 2024, in a further attempt to silence Plaintiff's mounting complaints, Defendant Palmer, copying Defendant Figliano, issued a written offer to grant Plaintiff a

manufactured, unearned degree in Interdisciplinary Studies with three arbitrary minors. Subsequent documentation from the Document Management Coordinator revealed that two of the promised minors did not even exist in the university curriculum, and the evaluation impermissibly utilized unrelated athletic credits earned years prior at a community college. Plaintiff formally rejected the fraudulent degree offer.

31. In October 2024, Plaintiff initiated a regulatory complaint process through ACHE. Defendants Leonard and McGill actively mismanaged the process, instructing Plaintiff to resubmit complaints to Troy University, which allowed the university fifty-six days to compile a defensive response.

32. On September 24, 2024, Defendant McGill requested an off-the-record phone call with Plaintiff, during which McGill admitted that the ACHE investigation revealed clear wrongdoings by Troy University and stated that Troy would offer a "five-figure resolution". Defendant McGill explicitly warned Plaintiff that if she did not accept the offer, it would be a "hard road" for her. Plaintiff filed a complaint with the State of Alabama Office of the Attorney General.

33. On October 17, 2024, Plaintiff received a letter from the Office of the Attorney General that stated that Troy University indicated an unwillingness to cooperate with them.

34. On November 7, 2024, ACHE issued a final determination. Despite having full knowledge that the "exception to policy" was a fabricated forgery designed to bypass federal financial aid reporting, and the manufactured unearned degree was an attempt to silence Plaintiff's complaint, ACHE's determination ratified the fraud, concluding that no further institutional compensation was required beyond the unauthorized $1,940.00 deposit.

35. Defendants McGill and Leonard intentionally excluded Plaintiff's critical supporting evidence from the final record and failed to notify the New Mexico NC-SARA State Portal Entity of the consumer protection violations, explicitly violating mandatory NC-SARA standards.

36. On November 7, 2024, Defendant McGill explicitly instructed Plaintiff via written correspondence that she could appeal Alabama's State Portal Entity (SPE) determination based on procedural mistakes through the State Reciprocity Committee, which was chaired by Dr. Carl Pettis. Defendant McGill instructed Plaintiff to submit a letter to the copied email of Dr. Pettis, detailing where the SPE failed to follow its stated processes or the NC-SARA Policy Manual, and how those oversights substantively impacted the determination.

37. Relying strictly on Defendant McGill's explicit instructions, Plaintiff submitted a formal written appeal via email to Dr. Carl Pettis on June 25, 2025, and followed up with a second written inquiry via email on July 26, 2026, outlining the procedural failures and document exclusions. Dr. Carl Pettis and the State Reciprocity Committee failed to respond, acknowledge, or issue any administrative decision regarding either piece of electronic correspondence, effectively stonewalling Plaintiff's regulatory remedies through total institutional silence.

38. On March 4, 2026, Plaintiff submitted a request to Troy University's Academic Evaluation Center for an evaluation of her courses and an audit of the Interdisciplinary Studies degree with three minors that were offered by Defendant Palmer.

39. On March 6, 2026, the online Academic Advisor and Coordinator of the Document Management Center stated that two of the minors did not exist.

40. Subsequently, Defendant Templeton notified Plaintiff that she was eligible for the degree.
41. On March 6, 2026, Plaintiff received the requested degree audit and discovered five administrative exceptions, lower-level course substitutions for upper-level requirements, unfulfilled requirements, and utilization of credits earned as a scholarship athlete years prior to attending Troy University.
42. On July 28, 2026, authentic internal recordings of Troy University ITP meetings surfaced online. In these recordings, Defendant Robertson explicitly admitted to the hidden, discriminatory policy, stating to students: "Online students are not placed because Troy doesn't have freelance educators," "You are on your own without anything from us," and "ITP scholarships are only for Alabama residents".
43. On or about July 29, 2026, Plaintiff discovered authentic video recordings of an ITP instructor discussing the competency of the ITP.
44. On October 8, 2026, Plaintiff learned that the status her application for Borrower's Defense to Repayment is "2.01-Awaiting School Response".

EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS

45. Plaintiff realleges and incorporates all prior paragraphs and asserts that any applicable statute of limitations is equitably tolled. Plaintiff pursued her rights with utmost diligence from New Mexico by filing timely regulatory grievances, adhering strictly to administrative appeal instructions by emailing State Reciprocity Committee Chair Dr. Carl Pettis on June 25, 2025, and July 26, 2026, and making repeated requests to Troy University for her files.
46. Troy University officials actively denied Plaintiff's repeated requests for the underlying documentation on the unauthorized exception to policy. Troy University's memorandum

of the exception to policy was provided to Plaintiff by Defendant McGill on October 17, 2024. The memorandum omitted any reference to financial aid adjustments and falsely stated that Plaintiff had personally requested the exception. Because the document explicitly concealed the financial aid manipulation, Plaintiff could not have discovered the true nature, scope, and specific financial injury to her federal student aid records on that date.

38. Defendants actively obstructed Plaintiff by withholding critical documents, providing false information regarding financial aid adjustments, mismanaging the regulatory process, and completely ignoring formal appellate correspondence.

39. Because the critical discovery date of October 17 fell on a Saturday, and because Plaintiff is a pro se litigant residing out-of-state in New Mexico who was subjected to extraordinary administrative obstruction, total institutional silence, and active concealment by the Defendants, equity requires that the limitations period be tolled to permit this action.

COUNT I – BREACH OF CONTRACT

(Against Defendant Troy University)

41. Plaintiff realleges and incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

42. A binding, enforceable written contract existed between Plaintiff and Defendant Troy University, the terms of which were governed by the explicit provisions of the 2019-2020 Academic Catalogue.

43. Plaintiff fully fulfilled her obligations under the contract, completing forty-four credit hours with a 3.79 cumulative GPA and maintaining a $0.00 account balance.

44. Defendant Troy University materially and systematically breached its explicit written obligations by failing to provide the promised clinical mentors, field placements, supervision, and core educational infrastructure essential to distance-education learners.

45. Defendant Troy University further breached the contract by unilaterally altering Plaintiff's degree path, changing her catalog year without consent, and creating structural barriers that rendered her ineligible for standard financial aid, directly resulting in out-of-pocket costs and the total depletion of her educational funding.

46. As a direct and proximate result of Defendant Troy University's material breaches, Plaintiff suffered severe financial damages, academic disruption, and the total loss of professional career alignment.

COUNT II - DEPRIVATION OF FOURTEENTH AMENDMENT DUE PROCESS

(Against Defendants Palmer, Fulmer, and Taylor in Their Individual Capacities)

47. Plaintiff realleges and incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

48. At all times relevant, Defendants Palmer, Fulmer, and Taylor acted under color of state law in their respective capacities as public university administrators.

49. Plaintiff possesses a constitutionally protected property interest in her federal student aid eligibility, lifetime Pell Grant allocations, and the integrity of her official academic progress records.

50. Without notice, consent, or a meaningful opportunity to be heard, Defendants Palmer, Fulmer, and Taylor fabricated, approved, and executed a fraudulent retroactive "exception to policy" on Plaintiff's behalf, directly damaging her federal aid status, academic standing, and Satisfactory Academic Progress.

51. As a direct and proximate result of the actions of these Defendants, acting in their individual capacities under color of state law, Plaintiff was deprived of her protected property interests without Due Process of law, resulting in severe financial and educational injury.

COUNT III - DEPRIVATION OF FOURTEENTH AMENDMENT EQUAL PROTECTION

(Against Defendants Robertson, Palmer, and Figliano in Their Individual Capacities)

52. Plaintiff realleges and incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

53. At all times relevant, Defendants Robertson, Palmer, and Figliano acted under color of state law in their capacities as faculty directors and successive Deans of the Troy University College of Education.

54. Defendants Robertson and Palmer intentionally designed, instituted, and maintained an undisclosed internal distance-education policy that purposefully discriminated against out-of-state, online students by denying them the clinical mentors, field placements, resource allocations, and institutional scholarships openly provided to similarly situated in-state, on-campus students.

55. Defendant Figliano actively enforced and perpetuated this discriminatory framework and collaborated with Defendants Palmer and Robertson to suppress Plaintiff's complaints through the issuance of a fraudulent, unearned degree evaluation.

56. Defendants Robertson, Palmer, and Figliano treated Plaintiff differently than on-campus students without any rational, legitimate, or compelling state interest, effectively barring online distance-learners from completing mandatory degree requirements.

57. As a direct and proximate result of these discriminatory actions, Plaintiff was denied Equal Protection under the law, resulting in severe academic, professional, and financial damages.

COUNT IV - CIVIL CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS

(Against Defendants Palmer, Fulmer, Taylor, Figliano, Templeton, Robertson, McGill, and Leonard in Their Individual Capacities)

58. Plaintiff realleges and incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

59. Defendants Palmer, Fulmer, Taylor, Figliano, Templeton, Robertson, McGill, and Leonard, acting in concert and under color of state law, knowingly, willfully, and maliciously entered into an agreement and conspiracy to deprive Plaintiff of her protected property interests, civil rights, and statutory remedies.

60. Defendant Templeton acted as the operational administrative conduit between Troy University and ACHE to facilitate, manage, and coordinate the joint concealment of Plaintiff's grievances across both state entities.

61. In furtherance of this conspiracy, the Defendants committed overt acts, including: the unauthorized fabrication and processing of academic forgiveness records by Palmer, Fulmer, and Taylor; the creation and issuance of a fraudulent, unearned degree evaluation by Palmer, Figliano, Templeton, and Robertson; and the strategic suppression and manipulation of investigative findings by McGill and Leonard.

62. The express purpose of this multi-agency conspiracy was to deceptively silence an out-of-state whistleblower, evade federal financial aid regulatory scrutiny, and insulate Troy

University from institutional liability at the direct expense of Plaintiff's financial stability and career.

63. As a direct and proximate result of the conspiratorial actions of these Defendants, Plaintiff suffered severe economic harm, loss of federal aid eligibility, and profound educational disruption.

COUNT V - FRAUDULENT CONCEALMENT AND PROMISSORY FRAUD

(Against Defendants Troy University, Robertson, Palmer, and Figliano)

64. Plaintiff realleges and incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

65. Defendants Troy University, Robertson, and Palmer made explicit, material misrepresentations in their public academic catalogues, recruiting materials, and web checklists, falsely promising that the online ITP provided localized clinical placements, field mentors, and institutional supervision.

66. These representations were intentionally false when made. As proven by authentic internal institutional recordings discovered by Plaintiff on July 28, 2026, Defendant Robertson and university administrators maintained a strict, hidden internal policy explicitly acknowledging that online distance learners would receive no institutional placements, no paid mentors, and no resource support, stating expressly to staff: "You are on your own without anything from us".

67. Defendants actively and fraudulently concealed this internal policy from prospective out-of-state students to induce them to enroll, pay tuition, and deplete their lifetime federal financial aid allocations.

68. Plaintiff reasonably relied upon these public misrepresentations to her severe economic and professional detriment. Plaintiff could not have discovered this systemic, hidden fraud until the internal recordings publicly surfaced on July 28, 2026.

69. As a direct and proximate result of Defendants' fraudulent concealment and promissory fraud, Plaintiff suffered severe financial damages, lost wages, and profound academic disruption.

COUNT VI - DEPRIVATION OF FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS

(Against Defendants McGill and Leonard in Their Individual Capacities)

70. Plaintiff realleges and incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

71. Defendants McGill and Leonard, acting under color of state law as regulatory officials for the Alabama Commission on Higher Education (ACHE), were charged with conducting a fair, impartial, and lawful administrative review of Plaintiff's consumer protection and institutional licensure complaints.

72. Plaintiff possessed a protected property and liberty interest in a fair regulatory process and in the mandatory reporting of institutional violations to the national NC-SARA interstate portal to protect her educational standing.

73. Defendants McGill and Leonard systematically deprived Plaintiff of procedural due process by conducting a biased, manufactured investigation. Defendants actively concealed critical evidence, purposefully excluded Plaintiff's supporting documents from the final record, and threatened Plaintiff with an arduous "hard road" if she did not accept a coerced financial settlement.

74. Defendants McGill and Leonard issued a final determination on November 7, 2024, that intentionally rubber-stamped a forged, unauthorized "exception to policy" document, while deliberately failing to report Troy University's documented violations to the New Mexico NC-SARA State Portal Entity as mandated by law.

75. As a direct and proximate result of the lawless and arbitrary administrative actions of Defendants McGill and Leonard, culminating in the final determination of November 7, 2024, Plaintiff was deprived of her constitutional rights without due process, resulting in the permanent loss of her federal aid eligibility and career alignment.

PRAYER FOR RELIEF

76. Plaintiff Stefanie Killian respectfully requests that this Court enter judgment in her favor and against the Defendants, granting the relief outlined in the following paragraphs.

77. Plaintiff requests an award of compensatory damages against Defendants Kerry J. Palmer, Hal Fulmer, Judy Robertson, Veda Taylor, Fred Figliano, Mary Anne Templeton, Robin McGill, and Ron Leonard, in their individual capacities, in the approximate amount of $291,000.00 to remedy the severe economic harm caused by their constitutional violations and tortious actions.

78. The requested compensatory damages are itemized as $49,000.00 for tuition, fees, books, subscriptions, and accrued loan interest paid to Troy University; $35,000.00 for tuition and related academic costs incurred at the University of New Mexico; $500.00 for academic costs incurred at Central New Mexico Community College; $6,500.00 for academic costs incurred at Rochester Community and Technical College; and $200,000.00 for lost wages and future earning capacity resulting from forced career realignment.

79. Plaintiff requests an award of compensatory damages against Defendant Troy University for breach of contract in an amount to be determined at trial.
80. Plaintiff requests an order granting permanent injunctive relief directing the appropriate Defendants in their official capacities to correct Plaintiff's official academic transcripts by immediately removing all failing grades, modifications, and administrative changes made pursuant to the unauthorized and fabricated February 28, 2023 "exception to policy" request.
81. Plaintiff requests an order directing the appropriate Defendants to produce and deliver to Plaintiff all concealed internal records, communications, and meeting minutes related to the review, fabrication, and submission of the exception to policy request processed on Plaintiff's behalf.
82. Plaintiff requests an order directing the appropriate Defendants to provide immediate, transparent written disclosures to all current and prospective online Interpreter Training Program (ITP) students regarding the actual limits on internship placements, field mentors, and institutional resources available to distance education students, or discontinue offering the program to distance learners.
83. Plaintiff requests an order directing the appropriate Defendants to amend and correct the active Troy University Academic Catalogue to accurately reflect the online ITP program's real structural offerings.
84. Plaintiff requests an award of punitive damages against the individual Defendants in their individual capacities for deliberate and malicious violations of 42 U.S.C. § 1983 and civil conspiracy.

85. Plaintiff requests an award of pre-judgment and post-judgment interest on all sums awarded, along with the costs of this action, and such other relief as the Court deems just and proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: October 19, 2026

Stefanie Killian, pro se

Stefanie Killian, pro se

2805 Leopoldo Rd NW

Albuquerque, NM 87104

(505) 715-2997

skilliantz5@gmail.com

ORIGIN ID:ONMA (505) 715-2997
STEFANIE KILLIAN

2805 LEOPOLDO RD NW

ALBUQUERQUE, NM 87104
UNITED STATES US

SHIP DATE: 20OCT26
ACTWGT: 5.40 LB
CAD: 6574591/ROSA2710

TO USDC CLERK OF COURT

ONE CHURCH STREET, ROOM B 110

MONTGOMERY AL 36104
(334) 954-3600

INV:
PO: REF:
DEPT:

FedEx
Express

E

FedEx
TRK# 0201 8789 0247 0232

TUE - 20 OCT AA
STANDARD OVERNIGHT
DSR

XA MONTG

MGMA 36104
AL-US
BHM

2150205 19Oct2026 ABQA/0950 58GJ1/70DF/59F2